UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

NITIN KHURANA,

                Plaintiff,

   -against-

JMP USA, INC. and RAVINDER SINGH,

                Defendants.

----------------------------------------------------------------X

**FINDINGS OF FACT
AND CONCLUSIONS
OF LAW**

14-CV-4448 (SIL)

**LOCKE, Magistrate Judge:**

Plaintiff Nitin Khurana ("Plaintiff" or "Khurana) commenced this action against Defendants Ravinder Singh ("Singh" or "Individual Defendant") and JMP USA, Inc., a New York corporation ("JMP USA" or "Corporate Defendant") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq* that occurred during his employment as an attendant at USA Gas Station, which Defendants owned and operated. *See* Docket Entry ("DE") [1]. This action was assigned to this Court for all purposes pursuant to 28 U.S.C. § 636(c). *See* DE [27]. As detailed herein, the Clerk of the Court entered a Certificate of Default against the Corporate Defendant on June 30, 2016. With respect to the Individual Defendant, the Court held a bench trial on June 29, 2016. *See* DE [39], [40]. Included with his Proposed Findings of Fact and Conclusions of law submitted after trial, Khurana also moved for a default judgment against JMP USA. *See* DE [42].

Accordingly, the Court herein decides Plaintiff's motion and issues its findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). Having reviewed

the Complaint and considered the evidence adduced at trial, the arguments of counsel, the parties' post-trial submissions, and the controlling law on the issues presented, the Court concludes that Plaintiff has met his burden of proof on all of his overtime and spread of hours claims arising under the FLSA and NYLL, and that he is entitled to $39,427.44 in damages and prejudgment interest from both JMP USA and Singh, who are jointly and severally liable.

## I.    PROCEDURAL HISTORY

By way of Complaint filed July 24, 2014, Plaintiff commenced this action, seeking to recover, among other things: (i) unpaid overtime pursuant to the FLSA and NYLL and (ii) unpaid spread of hours compensation pursuant to the NYLL. *See* Compl. ¶¶ 51-64.

In their answer to the Complaint, Defendants asserted a counterclaim alleging a discrepancy in the gas pump receipts and records that suggested Plaintiff misappropriated funds from JMP USA during his employment. *See* Answer, DE [7]. Defendants provide no specificity in the Answer as to the dates on which the thefts are alleged to have occurred or the actual amount that was stolen. *See id.*

On October 19, 2015, the Court adopted the Proposed Joint Pre-Trial Order and certified the completion of discovery. *See* DE [21], [22]. In anticipation of trial, on December 14, 2015, both parties consented to the jurisdiction of this Court for all purposes. *See* DE [27]. However, on December 30, 2015, Defendants filed a signed consent to relieve their counsel and proceed *pro se*. DE [28]. After hearing from Defendants and their attorney on January 6, 2016, the Court allowed defense counsel

to withdraw.  DE [29].  Though the Court warned Singh that day and at each subsequent appearance that JMP USA, as a corporation, could not proceed *pro se,* he as its sole officer and shareholder nevertheless failed to retain counsel for the Corporate Defendant.  DE [29], [31], [32].  Consequently, on June 10, 2016, Plaintiff filed a Request for and, on June 30, 2016, the Clerk of the Court entered a Certificate of Default against JMP USA.  DE [36], [38].

After the Corporate Defendant defaulted, Singh continued as a *pro se* defendant with respect to his personal liability for the FLSA and NYLL violations alleged in the Complaint.  *See* DE [36], [32].  On June 29, 2016, the Court conducted a bench trial on this question and to determine what if any damages were warranted.  *See* DE [39].  At trial, Plaintiff offered: (i) testimony from himself, (ii) excerpts from Singh's deposition, and (iii) Plaintiff's shift reports that indicated his total weekly pay for 81 out of the 102 weeks of employment at issue.  *See id.*  Defendant Singh offered only his own testimony.  *See id.*  Following the trial, at the Court's direction, the parties submitted their proposed findings of fact and conclusions of law.  *See* DE [42], [42-3].  Plaintiff also sought in its submission a default judgment against the Corporate Defendant.  *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law ("Pl. Findings") at 10, DE [42].

## II.  DEFAULT JUDGMENT AGAINST JMP USA

The Court first turns to Plaintiff's application for a Default Judgment against the Corporate Defendant that was included with Khurana's Proposed Findings of Fact and Conclusions of Law.  *See id.*

3

"It is settled law that a corporation may not appear in a lawsuit against it except through an attorney, and that, where a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55, Fed. R. Civ. P." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (citing *SEC v. Research Automation Corp.*, 521 F.2d 585 (2d Cir. 1975)) (internal quotations omitted). This rule is fully applicable even where the sole shareholder of the defaulting corporation elects to proceed *pro se* regarding his personal liability because he is, as a matter of law, situated differently from the corporation, whose interests may at times "overlap but are not identical in all respects." *Grace*, 443 F.3d at 192 (internal citations and quotation marks omitted).

As noted above, JMP USA consented to its attorney's withdrawal prior to trial. *See supra* at 2-3. Defendant Singh affirmatively acknowledged the consequences of attempting to litigate his personal liability *pro se*. *See* the Consent to Change Attorney, DE [28]. Despite the Court's repeated warnings that a failure to retain counsel for the corporation would result in a default, Singh did not retain new counsel for JMP USA. *See supra* at 3. Accordingly, for the reasons detailed below, the Court grant's Khurana's motion for a default judgment against JMP USA in its entirety.

## A. <u>Legal Standard</u>

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See*

Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party must then apply for entry of a default judgment. *Id.* Where a default occurs, the well-pleaded factual allegations set forth in a complaint concerning liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parikiet Sp. Zoo v. Seneca Hardwoods LLC*, 13-CV-4358, 2014 U.S. Dist. LEXIS 71289, at *11 (E.D.N.Y. May 23, 2014) (Report and Recommendation), *adopted by*, 2014 U.S. Dist. LEXIS 83128 (E.D.N.Y. June 18, 2014) (internal quotation omitted). Rather, the district court must determine whether the plaintiff's allegations establish liability as a matter of law. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *see also Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (holding that a plaintiff seeking a default judgment must establish that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action"). The decision whether to enter a default judgment "is entrusted to the sound judicial discretion of the court." *Allstate Ins. Co. v. Howell*, 09-CV-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a

district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.").

In response to Defendants' repeated failure to retain counsel, Plaintiff appropriately requested a Certificate of Default against JMP USA from the Clerk of this Court on June 10, 2016, which was properly served upon the Corporate Defendant. DE [37]. Moreover, the Court repeatedly cautioned JMP USA's principal, the present *pro se* defendant, that his failure to retain counsel would result in JMP USA defaulting. *See* DE [29], [31], [32]. The Clerk then issued and entered a Certificate of Default on June 30, 2016. *See* Entry of Default, DE [38]. Accordingly, as a default judgment would be procedurally appropriate, the Court now examines whether Plaintiff has established the Corporate Defendant's liability.

**B. Discussion**

1. Overtime FLSA Claim

In the Complaint, Khurana first alleges that JMP USA owes him unpaid overtime compensation pursuant to the FLSA for a period that includes July 2, 2012 through July 6, 2014. *See* Pl. Findings at 2; Compl. ¶¶ 51-64, Estimated Calculation of Damages ("Est. Calc. of Dams"). For the reasons set forth below, the Court finds that the Corporate Defendant is liable with respect to this claim.

*i. Employer Status*

To prove FLSA overtime liability Plaintiff must first establish that JMP USA was an employer under the FLSA and was engaged in interstate commerce. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, 12-CV-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013). The FLSA defines "employer" as "any person acting

directly or indirectly in the interest of an employer in relation to an employee . . . ."
29 U.S.C. § 203(d).  To determine whether an individual is an "employer" under the
FLSA, the Second Circuit utilizes the economic realities test, which focuses on
"whether the alleged employer (1) had the power to hire and fire the employee[], (2)
supervised and controlled employee work schedules or conditions of employment, (3)
determined the rate and method of payment, and (4) maintained employment
records."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (citation
omitted); *see also Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016)
(applying factors in FMLA context).  In addition, the analysis depends on whether
the defendant had "operational control" over employees.  *Irizarry*, 722 F.3d at 110.
Operational control does not necessarily require direct contact with employees and
workplaces.  *See id.*  Rather, liability exists where the employer exercises control over
and makes decisions that "directly affect the nature or conditions of the employees'
employment."  *Id.*

Here, the Complaint sufficiently alleges that JMP USA was a covered employer
under the FLSA.  Khurana articulates that the Corporate Defendant owned and
operated USA Gas Station where he worked, and also that Singh, in his role as the
sole officer of JMP USA, "exercised operational control, … controlled significant
business functions …, determined employee salaries, made hiring decisions, and
acted on behalf of and in the interest of [the Corporate Defendant] … devising,
directing, implementing, and supervising the wage and hour practices and policies

relating to the employees." *Id.* at ¶ 8.  Accordingly, the Court finds that JMP USA is properly classified as an employer.

Next, the Court must then determine whether the employer is engaged in interstate commerce sufficient to apply the FLSA.  Specifically, an employer is liable for wage violations under the FLSA "if it hires an employee who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce."  *See Valdez v. H & S Rest. Operations, Inc.*, 14-CV-4701, 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016), (Report and Recommendation), *adopted by*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales made or business done is not less than $500,000" and has employees that engage in interstate commerce.  29 U.S.C. § 203(s)(1); *Valdez*, 2016 WL 3079028, at *2.

Plaintiff alleges in the Complaint that the gross annual volume of sales made or business done by JMP USA exceeded $500,000, and that "Defendants ... engaged in commerce or in the production of goods for commerce."  Compl. ¶¶ 53-54.  Although Khurana does not provide specific instances of interstate commerce, the Court can infer an interstate nexus based upon the factual allegations that the Corporate Defendant operated a gas station and that Plaintiff worked as a clerk selling gasoline to customers – a product reasonably presumed to have originated, at least in part, outside of New York State.  *See Kinzer v. Stelling,* 2012 WL 1405694, at *2–*3 (M.D.Fla. Mar. 28, 2012) (finding FLSA applicable where complaint alleged that

defendant operated retail gas station, convenience store, and car repair shop and sold gasoline and other items)*; see also Cardoza v. Mango King Farmers Mkt. Corp.*, 14-cv-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), (Report and Recommendation)*, adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (inferring interstate commerce where defendants were engaged in the food supply industry because it could be reasonably inferred that some of their products originated and/or were sold outside of New York).

Accordingly, the Corporate Defendant is deemed an employer subject to the FLSA.

### ii.    Liability

The Court now turns to the substance of the Plaintiff's overtime claim.  The FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Here, Khurana has established an ongoing overtime violation that includes a period running from July 2012 through to the end of his employment in July 2014. Compl. ¶¶ 9-39.  From July 2012 through November 2012, Khuranna alleges that he worked approximately 102 hours per week.  *See id.* at ¶ 17.  From November 2012 through April 2013, Plaintiff claims that he worked approximately 96 hours per week.

*See id.* ¶ 21.  From April 2013 through September 2013, Khurana alleges that he worked 102 hours per week.  *See id.* ¶ 25.  From September 2013 through June 2014, Plaintiff claims to have worked 82 hours per week.  *See id.* ¶ 31.  In June and July of 2014, Khurana alleges that he worked approximately 102 hours per week until the end of his employment.  *See id.* ¶ 36.

According to the Complaint, for all of the hours that Plaintiff worked in excess of his initial 40 each week, Defendants only paid him "straight time pay," and not the statutorily mandated 150% overtime premium.  *Id.* ¶¶ 44-47.  As such, Plaintiff properly makes out a violation of the FLSA's overtime provisions.  *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 122 (E.D.N.Y. 2011) ("Because the Complaint alleges that Plaintiffs worked more than 40 hours a week and were not paid time-and-a-half for their overtime hours, Plaintiffs have sufficiently pleaded a violation of 29 U.S.C. § 207.").

Accordingly, based on the allegations set forth in the Complaint, the Court finds JMP USA liable for failure to pay overtime in violation of the FLSA.

### 2.   Overtime Claim Under New York Labor Law

Khurana also asserts that the Corporate Defendant violated the NYLL's overtime provisions for the same period of employment, December 2011 through July 2014. *See* Compl. ¶¶ 59-64.  Applying the standards below, the Court finds JMP USA liable for violating the overtime provisions of the NYLL as well.

Consistent with the FLSA, the NYLL regulations state that: "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the

employee's regular rate . . . ."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; *see Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (noting that the NYLL is the "state analogue to the federal FLSA.").  In fact, the NYLL "mirrors the FLSA in compensation provisions regarding overtime wages."  *Valdez*, 2016 WL 3079028, at *3; *D'Arpa*, 2013 WL 3010810, at *18 ("[The NYLL] otherwise echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements.").  Consequently, the courts of the Second Circuit routinely impose liability for an overtime violation of the NYLL if it has already found liability under the FLSA.  *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("Applying the same reasoning used in the FLSA analysis to the state claims, this Court finds that the undisputed allegations in the complaint and default submissions are sufficient to impose liability on defendants under the NYLL overtime . . . provision[].").  Accordingly, as JMP USA is considered an employer under the FLSA, it is similarly an employer under the NYLL.  *See Garcia v. La Revise Associates LLC*, 08 CIV 9356, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's "employer" provisions are equally broad [as that of the FLSA].") (quoting *Spicer v. Pier Sixty LLC,* 269 F.R.D. 321, 335 n. 13 (S.D.N.Y. 2010)).

As an employer subject to the NYLL, the Corporate Defendant is consequently liable for Khurana's properly pled violation of the statute's overtime requirements.  Plaintiff pleads that he worked in excess of forty hours per week, stating, in fact, that he regularly worked at least 82 hours per week from January 2011 through July 2014, working either six or seven days each week.  Compl. ¶¶ 12-39.   During this time

period, Defendants compensated him only at the regular hourly rate without any premium compensation for those hours worked in excess of his first 40 per week.  *Id.* ¶¶ 62-63.  Accordingly, a default judgment against JMP USA is appropriate not only under the FLSA but also under the NYLL.

### 3.    Spread of Hours

The Corporate Defendant is also liable for violating the spread of hours provisions of the NYLL because JMP USA never provided any additional compensation to Plaintiff for Khurana's shifts that exceeded ten hours in length. "The relevant regulation of the New York State Department of Labor ... provides, in pertinent part, that, 'in addition to the minimum wage,' if an employee works in excess of 10 hours in a day, '[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate.'" *Chuchuca v. Creative Customs Cabinets Inc.,* 13-Civ.-2506, 2014 WL 6674583, at *10 (E.D.N.Y. Nov. 25, 2014) (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4).  As of December 31, 2013, the basic minimum hourly wage rate rose to $8.00 per hour in New York State.  *See* 12 N.Y.C.R.R. § 142-2.1. Plaintiff states in the Complaint that, during his entire two years of employment at USA Gas Station, Defendants never paid him any premium beyond his wage of $8.00 per hour even when he worked a shift in excess of ten hours.  *See* Compl. ¶¶ 46-49, 65-68.  Thus, from December 31, 2013 through July 7, 2014, Defendant was being paid at the minimum wage.  *Compare* 12 N.Y.C.R.R. § 142-2.1. *with* Compl. ¶¶ 46-49, 65-68.  Accordingly, in addition to the ongoing overtime violation discussed above,

Plaintiff is also entitled to unpaid spread of hours compensation for each day he worked for the Corporate Defendant during this time period.

4. <u>NYLL 195 Wage Notice Statutory Penalties</u>

Although Khurana is entitled to a judgment against JMP USA regarding his overtime and spread of hours causes of action, the Court denies Plaintiff's demands for NYLL section 195(1) and 195(3) Wage Statement Statutory Penalties as they were not included in the Complaint and instead both raised for the first time in the present motion. As noted above, under Federal Rule of Civil Procedure 55(a) "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," the defaulting defendant is deemed to admit every *well-pleaded allegation in the complaint. See Greyhound Exhibitgroup, Inc. v. E.L .U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied,* 506 U.S. 1080, 113 S. Ct. 1049 (1993) (emphasis added); *Montcalm Pub. Corp. v. Ryan,* 807 F. Supp. 975, 977 (S.D.N.Y. 1992). This presumption is predicated upon the complaint giving the opposing party notice as to what specific relief its adversary seeks and what provision of which law is being invoked. *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 245–46 (2d Cir. 2004). Accordingly, a plaintiff may not seek damages tied to causes of action not pled in the unanswered complaint by raising them for the first time as part of a motion for default judgement. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); *Silge v. Merz*, 510 F.3d 157, 160 (2d Cir.2007) (declining to award pre-judgment interest where plaintiff failed to include a claim for

13

such damages in the demand clause, and noting that "[b]y operation of Rule 54(c), his failure to do so, intentional or not, ran the risk that his damages would be limited in the event of default."); *Trustees of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund & 401(k) Sav. Plan v. Generation II Plumbing & Heating, Inc.*, 07-CV-5150, 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009) (declining to award delinquency charges associated with the unpaid dues as part of a default judgment because plaintiffs, in their complaint, demanded only delinquency charges on the unpaid *contributions*).

Khurana presently seeks damages pursuant to the Wage Statement and Wage Notice provisions of the NYLL for Defendants' failure to provide mandatory information regarding Khurana's rates of pay and terms of employment. *See* Pl. Findings at 17-18. Although particularized and substantiated in Plaintiff's Proposed Findings of Fact, these requests for relief for additional violations by JMP USA are not concretely articulated in the Complaint, which was never amended prior to the filing of the instant motion for a default judgment. *Compare* Compl. *with* Pl. Findings. Accordingly, as the Corporate Defendant was never given notice of these claims, the Court denies Khurana's application for a default judgement for violations of NYLL sections 195(1) and 195(3).

Based on the foregoing, the Court enters a default judgment against JMP USA for its failure to pay Plaintiff the overtime premium mandated by both the FLSA and the NYLL and a separate additional failure to compensate Plaintiff properly in accordance with the NYLL's spread of hours provisions.

III.    **J**OINT AND **S**EVERAL **L**IABILITY OF **S**INGH

Having found the Corporate Defendant liable, the Court next turns to whether at the bench trial held on June 29, 2016, Plaintiff established liability with respect to the Individual Defendant who proceeded *pro se* after JMP USA's default.

A. <u>Findings of Fact</u>

The following constitutes the Court's Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a)(1).[1]  These Findings of Fact are drawn from witness testimony at trial and the trial exhibits. In general, having considered all of the evidence (including the credibility of the witnesses), the Court found Khurana's testimony corroborated by other evidence was credible with certain exceptions noted below.

Sometime in 2011, Singh formed and became the sole shareholder of JMP USA, which was in turn the owner and operator of USA Gas Station located at 515 Old Country Road in Westbury, Nassau County, New York.  Trial Transcript ("Tr.") at 11, 87-88, 109.  In the Joint Pre-Trial Order, the parties stipulated that JMP USA "was an enterprise engaged in commerce or in the production of goods for commerce subjecting it to regulation under the FLSA during the time period of Plaintiff's employment.  Joint Pre-Trial Order ("JPTO") ¶ 7.  Singh, as JMP USA's president and sole officer, was the sole signatory to the lease of the premises of USA Gas Station and managed its day-to-day operations.  Tr. at 87, 89-92.  In his role as president and manager of JMP USA and USA Gas Station, Singh possessed the authority to hire

---

[1] To the extent that any Finding of Fact reflects a legal conclusion, it shall to that extent be deemed a Conclusion of Law, and vice-versa.

and fire employees, to decide their work schedules, and to decide their compensation. Tr. at 92.

USA Gas Station did business seven days a week. Tr. at 13. From May through November, it was open 7:00 a.m. to 10:00 p.m., Monday through Saturday, and 8:00 a.m. and 8:00 p.m. on Sundays. Tr. at 13, 93. From November through April, USA Gas Station closed one hour earlier Monday through Saturday. Tr. at 93.

Plaintiff worked as a gas station attendant from on or about July 2, 2012 to about July 6, 2014 and was Defendants' sole employee. Tr. at 10-11, 17, 50, 88, 91, 94-95, 99, 102. Khurana's primary responsibility was to sell gasoline to customers. Tr. at 12. Singh hired and supervised Plaintiff, determined Plaintiff's hourly wage, and set Plaintiff's work schedule on behalf of JMP USA. Tr. at 11-13, 15, 97, 101-102.

For his first year of employment with Defendants, Plaintiff worked seven days a week. Tr. at 13. Periodically, during the second year of Plaintiff's employment, Plaintiff received one day off each week. Tr. at 13-14. Throughout this time, Plaintiff regularly worked from the time USA Gas Station opened in the morning until it closed at night. Tr. at 14-15. With the exception of a three-week period after Hurricane Sandy during which the gas station was closed, Khurana worked every week according to the above schedule for the duration of his employment. Tr. at 16. Defendants did not regularly provide Plaintiff with an uninterrupted meal break during his shifts. Tr. at 17, 57.

Defendants never recorded the number of hours Plaintiff worked each day or each week by means of a time clock or time sheets. Tr. at 95-97, 99.    Khurana, however, did complete shift reports also called closing sheets, on which he indicated whatever money he was paid in cash and occasionally the number of hours he worked for a particular week. Tr. at 19-20, 58; *see* Plaintiff's Trial Exhibit ("Pl. Ex.") 1-84. These shift reports corroborate Khurana's testimony that he regularly worked more than ten hours per day and often in excess of twelve hours per day.  Tr. at 21; *see, e.g.,* Pl. Ex. 1, 11, 36.  Singh, in fact, admitted that Plaintiff worked at least sixty to seventy hours per week, every week, for two years straight.  Tr. at 100.

During the entirety of Khurana's employment, Plaintiff maintains that Defendants always paid him at a rate of $8.00 per hour without any premium or bonus while he worked in excess of ten hours a day and/or forty hours per week.  Tr. at 12-13, 20-22, 97, 101.  It is undisputed that Khurana was paid on a weekly basis out of the register in cash. Tr. at 17, 55-56, 95, 103-105. According to Khurana, Singh instructed him to take $8.00 out for every hour that he worked. Tr. at 20.  Plaintiff calculated his weekly pay by multiplying the number of hours he worked by $8.00. *Id.*  The amount that Plaintiff took in cash was indicated on that day's shift sheet. Tr. at 96, 101; *see* Pl. Ex. 1-84.  Singh admitted that Plaintiff was paid in this manner and that Khurana reported his weekly pay on the shift reports every week for the duration of his employment. Tr. at 96, 101. Defendants never provided Plaintiff with paystubs or receipts indicating his weekly pay. Tr. at 18-19, 102. Plaintiff's Exhibits 1 through 84, which were received into evidence at trial, show the compensation

Plaintiff was paid for most weeks of his employment, and, when that weekly total is divided by $8.00 to ascertain the number of hours worked per week, the product corroborates Plaintiff's testimony and the hours noted on several of the reports. *Compare* Pl. Ex. 1-84 *with* Est. Calc. of Dams.  In his deposition testimony, which was entered into evidence, Singh acknowledged that Khurana worked at least 60 to 70 hours per week, and referenced $8.00 per hour as the only rate of pay used during Plaintiff's employment.  *See* Tr. 97, 100.

Although Defendants never dispute their failure to comply with the NYLL's spread of hours rule and claimed in the Answer and the Joint Pre-Trial Order that Plaintiff was not paid overtime because he was exempt from those requirements as a manager, at trial, Singh claimed for the first time that Defendants in fact paid Plaintiff the overtime premium required under both the FLSA and NYLL.  *See* Tr. 118-19; Defendant's Proposed Findings of Fact and Conclusions of Law ("Def. Findings") at 3-4, DE [42-3].  At trial Singh did not dispute Plaintiff's total weekly cash pay as noted in the shift reports, but asserted that it was compensation for fewer hours than Plaintiff claims, paid at the proper time-and-half rate for all hours in excess of the initial forty per week.  *See* Tr. at 118.  Singh never provided any pay stubs or records of any kind reflecting that this was the actual arrangement at USA Gas Station under which Plaintiff was employed and instead urges the Court to credit his testimony because no reasonable person would work for two years more than forty hours a week without receiving overtime.  *See* Tr. 95-97; Def. Findings at 3-4.

The Court rejects this logic as patently unreasonable, and, in any event, it runs counter to the purposes of the FLSA and NYLL. *See Hengjin Sun v. China 1221, Inc.,* 12-CV-7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016) (citing *Chen v. New Fresco Tortillas Taco LLC*, 15 Civ. 2158, 2015 WL 5710320, at *7 (S.D.N.Y. Sept. 25, 2015)) (noting that both the FLSA and NYLL share a common purpose of deterring wage violations and compensating underpaid workers). Additionally, as an employer, it is Singh's responsibility to keep accurate records of the number of hours and rate of pay of his employees, which he failed to do. *See Amaya v. Superior Tile & Granite Corp.*, 10 CIV. 4525, 2012 WL 130425, at *7 (S.D.N.Y. Jan. 17, 2012) ("When an employer fails to keep accurate records, or keeps no records, courts permit the employee to carry his burden of proof [under the FLSA and NYLL] based upon his recollection of hours worked, which is presumed to be correct."). Finally in this regard, the Court notes that Singh's demeanor on the stand during this part of his testimony was not credible either. Accordingly, the Court declines to adopt Singh's testimony as to the number of hours Khurana worked and his pay rate and instead credits Plaintiff's testimony, which was corroborated in the weekly shift sheets received into evidence without objection. *See* JPTO ¶ 10; Tr. at 7-8; Pl. Ex. 1-84.

At trial, Singh attempted repeatedly to introduce documents that he alleged were from an unidentified technician that serviced his gas pumps in an attempt to prove his counterclaim that Plaintiff was stealing from Defendants and to impeach Khurana's credibility. Tr. at 106-07. Plaintiff timely objected on the grounds of hearsay and that these documents were not included in the Joint Pre-Trial Order.

*Id.* Nevertheless, Singh claimed that this technician told him that the pumps at USA Gas Station were misreporting the actual amounts of fuel being sold during Plaintiff's employment. Tr. at 113-14. Singh went on to allege that Khurana somehow caused the pumps to misreport to facilitate his theft of funds from JMP USA. *Id.* Singh admitted that he had no personal knowledge regarding the theft or the misreporting pumps, *id.* at 122, and offered no other evidence in support of his counterclaim. Thus, the evidence is insufficient to establish that Plaintiff stole any money from Defendants, whether by manipulating the gas pumps or otherwise.

### B. <u>Conclusions of Law</u>

For the reasons set forth below, the Court concludes that Plaintiff has satisfied his burden in establishing that the Individual Defendant, as well as JMP USA, violated the overtime and spread of hours provisions of the FLSA and NYLL, and that Khurana is thus entitled to recover damages from Singh, who is jointly and severally liable with the Corporate Defendant. The Court further determines that Singh failed to satisfy his burden with respect to his counterclaim for conversion having proffered no admissible evidence in support.

#### 1. <u>Burden of Proof</u>

It is well established that the plaintiff "bear[s] the burden of proof to establish all claims and damages by a preponderance of the evidence." *Tapia v. Blch 3rd Ave. LLC*, 14 Civ. 8529, 2016 WL 4581341, at *4 (S.D.N.Y. Sept. 1, 2016). A defendant must carry this same burden with respect to any affirmative defenses they assert or

counterclaims they bring.    *See Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 403 (S.D.N.Y. 2004).

### 2. Liability for Violations of the FLSA and NYLL

The Court first examines Singh's liability under the FLSA and NYLL. Plaintiff testified that Singh violated the FLSA and NYLL by failing to pay the overtime and spread of hours pay required by law.   *See* Pl. Findings at 5-9, 14-15; *see also* Compl. ¶¶ 51-64.  Plaintiff claims that he worked "more than forty (40) hours per week for the entire two years he worked for USA Gas Station" and was never paid any premium over his base rate of pay of $8.00.   *See* Pl. Findings at 9, 14-15.  Khurana further argues that Defendants did not prove by a preponderance of the evidence that the overtime pay law does not apply due to the executive exemption.  *Id.* at ¶ 13. Defendant Singh counters, without any reference to the testimony or evidence at trial, that Plaintiff was paid a base rate of pay of $8.00 per hour and overtime pay of $12.00 per hour.  *See* Def. Findings at 2-3.  Also without any evidence or substantive explanation, Singh further asserts that the exhibits that Plaintiff entered into evidence at trial were altered to implicate him and should be disregarded.  *See id.* at 3-5.

#### a. Threshold Issues

Before addressing the question of Defendants' liability and Plaintiff's damages, the Court notes that Khurana has satisfied the threshold issues for bringing an action under the FLSA and NYLL.  As an initial matter, USA Gas Station is subject to the FLSA's wage-and-hour provisions because it was "an enterprise engaged in

commerce" and, at all relevant times, its annual gross volume of sales and business exceeded $500,000. *Compare* 29 U.S.C. §§ 206(a), 207(a)(1) *with* JPTO ¶ 5, *supra* at 20. Therefore, the Court has: (i) subject matter jurisdiction over Plaintiff's claims arising under the FLSA pursuant to 28 U.S.C. §§ 1331 and 1337; and (ii) supplemental jurisdiction over Plaintiff's claims arising under the NYLL pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy. *See Tapia*, 2016 WL 4581341 at *4 (observing that the court had subject matter jurisdiction over the plaintiff's claims arising under the FLSA and NYLL). Moreover, venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because USA Gas Station Shop is a domestic business corporation organized under the laws of New York, with a sole and principal place of business located at 15 Old Country Road in Westbury, Nassau County, New York. *See* Tr. at 11, 87-88, 109; *see also* 28 U.S.C. § 1391; *Tapia*, 2016 WL 4581341, at *4.

> b. Whether Singh is Individually Liable as Plaintiff's Employer

Initially, the Court addresses whether Singh is individually liable for any overtime and spread of hours compensation due to Plaintiff. Pursuant to the FLSA, an employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA." *Hernandez v. Jrpac Inc.*, 14 Civ. 4176, 2016 WL 3248493, at *22 (S.D.N.Y. June 9, 2016); *see also Switzoor v. SCI Engineering, P.C.*, 11 Civ. 9332, 2013 WL 4838826, at *6 (S.D.N.Y. Sept. 11, 2013) (noting that the courts of the Southern District of New

York have applied the same employer analysis to the FLSA and NYLL).  Further, "an employer may include an individual owner who exercises a sufficient level of operational control in the company's employment of employees." *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 977 F. Supp. 2d 187, 201 (E.D.N.Y. 2013) (citing *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-11 (2d Cir. 2013)); *accord Switzoor*, 2013 WL 4838826, at *6 (observing that "[a] person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company").   In determining whether an individual is an employer, courts consider the same factors that apply to corporations, namely "whether the individual: '(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gillian v. Starjam Rest. Corp.*, 10 Civ. 6056, 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011); *see Gayle v. Harry's Nurses Registry, Inc.*, 07-CV-4672, 2009 WL 605790, at *9 (E.D.N.Y. Mar. 9, 2009) (quoting *Keun–Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting *Donavan v. Agnew*, 712 F.2d 1509 (1st Cir. 1983))) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liab[le] under the FLSA for unpaid wages.") (internal quotation marks omitted).

Here, Singh conceded that he is the owner, officer, and manager of JMP USA and USA Gas Station and that he exercised control over the terms and conditions of Plaintiff's employment.  Tr. at 89-97.  He also ran the day-to-day operations of the

23

business and hired Plaintiff.  Tr. at 87, 90-91.  These facts are sufficient to establish that Singh was Plaintiff's employer pursuant to the FLSA and NYLL.  *See Elerberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) (holding that an individual was an employer pursuant to the FLSA where he "exercised sufficient operational control over [the organization's] employees during [the plaintiff's] employment"); *Alladin v. Paramount Mgmt., LLC*, 12 Civ. 4309, 2013 WL 4526002, at *4 (S.D.N.Y. Aug. 27, 2013) (holding that a defendant who had supervisory authority over the plaintiff and established the terms of her employment was an employer under the FLSA).   Accordingly, Singh and JMP USA are jointly and severally liable for Defendants' violations of the overtime and spread of hours provisions provisions of the FLSA and NYLL.  *See Gayle*, 2009 WL 605790, at *9.

c.   Overtime Violations under the FLSA and NYLL

As Singh failed to prove by a preponderance of the evidence that Khurana was exempt from the FLSA or NYLL because he was employed in an executive capacity at USA Gas Station, the FLSA and NYLL govern Plaintiff's employment.   As explained above, pursuant to both the FLSA and NYLL, "employees working more than forty hours per week [must] be compensated for overtime work at a rate of one-and-a-half times their standard rate."  *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 (E.D.N.Y. 2010); *see* 29 U.S.C. § 207(a)(1) (setting forth this standard); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (adopting the FLSA's provisions and exemptions); *D'Arpa v. Runway Towing Corp.*, 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) ("The NYLL, like the FLSA, requires that

employers pay one and one-half times an employee's regular rate of work performed in excess of forty hours a week."); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) ("The New York Labor Law mirrors the FLSA in most aspects, including its wage and overtime compensation provisions."). However, employees employed in a "bona fide executive capacity" are exempt from the overtime provisions of both statutes. 29 U.S.C. § 213(a)(1); N.Y. Lab. Law § 651(5)(c); *see Callari v. Blackman Plumbing Supply Inc.*, 988 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) (observing that the FLSA and NYLL overtime and minimum wage provisions do not apply to employees "who are employed in 'a bona fide executive . . . capacity'. . . .").

Although neither the FLSA nor the NYLL defines the term "executive" for purposes of the executive exemption, the United States Department of Labor ("DOL") has promulgated regulations to aid in the analysis of whether an employee is exempt from the FLSA's overtime and minimum wage provisions. *See* 29 C.F.R. §§ 541.0 *et seq.* (the "Regulations"); *see also* 29 U.S.C. § 213(a)(1) (directing the Secretary of Labor to define, among other terms, "executive" for purposes of the executive exemption); *Callari*, 988 F. Supp. 2d at 275-76 (observing that the "[R]egulations have the force of law, and are generally given controlling weight"). To that end, courts in the Second Circuit also look to the Regulations in determining whether an employee is exempt under the NYLL. *See* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (adopting the FLSA's provisions and exemptions); *see also Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 160 (S.D.N.Y. 2014) ("FLSA's exemptions are incorporated into the NYLL."); *Gardner v. W. Beef Props., Inc.*, 07-CV-2345, 2013 WL 1629299, at 3 n.2

(E.D.N.Y. Mar. 25, 2013) ("New York law follows the FLSA on the standards that govern the executive exemption.") (Report and Recommendation), *adopted by* 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013); *Scott v. SSP Am., Inc.*, 09-CV-4399, 2011 WL 1204406, at *6 n. 7 (E.D.N.Y. Mar. 29, 2011) (internal citations omitted) ("Because New York's overtime provisions mirror and/or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938 and its attendant regulations, set forth in the Code of Federal Regulations.").  Relevant here, the Regulations provide that:

> The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a) (effective until December 1, 2016 after, all events at issue in this case occurred); *see Davis v. Mountaire Farms, Inc.*, 551 F. Supp. 2d 343, 348 (D. Del. 2008) (holding that new regulations promulgated by Secretary of Labor for determining whether employee is an executive employee exempt from FLSA's overtime compensation provisions did not apply retroactively) (citing *Velazquez–Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 14 n. 3 (1st Cir. 2007) (noting that

administrative regulations generally are not given retroactive effect)). It is well-established that "[i]t is the employer's burden to demonstrate that it is entitled to a particular exemption." *Kahn*, 331 F. Supp. 2d at 117; *see also Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 519-20 (S.D.N.Y. 2013) ("An employer seeking to rely upon an exemption as a defense to overtime bears the burden of proving that such exemption applies."); *Indergit v. Rite Aid Corp.*, 08 Civ. 9361, 2010 WL 2465488, at *2 (S.D.N.Y. June 16, 2010) ("[T]he employer bears the burden of proving that [an employee] has been properly classified as an exempt employee"); *Clougher*, 696 F. Supp. 2d at 289 n.4 (observing that the "application of the 'executive exemption' is an affirmative defense, which any defendant employer bears the burden of proving by a preponderance of the evidence"). Moreover, "because the FLSA is a remedial act, its exemptions, such as the bona fide executive' exemption . . . are to be narrowly construed." *Martin v. Malcom Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991).

In their Joint Pre-Trial Order, Defendants raised the affirmative defense that Khurana was exempt from the FLSA and NYLL's overtime provisions pursuant to the executive exemption as he "was hired as management exempt personnel to oversee retail sale of petroleum and other convenient merchandise stocked on the premises." JPTO at ¶ 4(i). Although these specific job responsibilities were substantiated at trial, because Khurana was the sole employee of USA Gas Station and was directly supervised by Singh, the exemption does not apply. *Compare* 29 C.F.R. § 541.104(a) ("To qualify as an exempt executive under § 541.100, the employee must customarily and regularly direct the work of two or more other employees.");

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (exempting from the New York State overtime rate only those employees concurrently exempt under sections 7 and 13 of 29 U.S.C.A. 201 et seq., the FLSA, as amended) *with* Tr. at 12, 17, 90-91, 94, 101. Additionally, it is undisputed that Plaintiff was not paid on a salaried basis; instead, he was paid at an hourly rate. Tr. at 12-13, 20, 97, 101. Accordingly, these facts establish that Plaintiff was not covered by the executive exemption, and therefore Defendants' affirmative defense fails.

Regarding Khurana's actual hours worked, Defendant Singh conceded that Plaintiff regularly worked sixty to seventy hours a week for two straight years as an employee at USA Gas Station. Tr. at 100. Singh does not dispute that Plaintiff was required to complete shift reports every time he closed the gas station at night, which indicated the amount he received for his weekly cash pay that came directly from the register. *See* Tr. at 19-20, 55-56, 96, 98, 101, 104-105; Pl. Ex. 1-84. On occasion, Plaintiff also wrote down the number of hours he worked for the week, and each notation exceeded the forty-hours-per-week threshold set by the FLSA and NYLL. Tr. at 19-20; Pl. Ex. 1, 11, 36. When Plaintiff's weekly pay is divided by his hourly wage, the shift sheets indicate that Plaintiff worked significantly more hours than Defendant Singh claimed, at times exceeding 100 hours per week. *See* Est. Calc. of Dams. Accordingly, since the Court determined that Defendants paid Plaintiff $8.00 per hour for all the hours that he worked, Plaintiff has established by a preponderance of the evidence that Singh violated the overtime provisions of the FLSA and NYLL by failing to pay him at a rate equal to one-and-one-half times his

normal rate of pay for hours worked in excess of forty in a given week. *See supra* at 17-19; Tr. at 13, 20-21.

### d. Spread of Hours Violations under the NYLL

In addition to the ongoing overtime violation described above, as Khurana is a non-exempt employee, the Court also determines that Singh is liable also for spread of hours violations. Pursuant to the NYLL, a minimum wage employee is entitled to one additional hour's pay at the basic minimum hourly wage rate for any day in which the employee works more than ten hours. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 389 (E.D.N.Y. 2012) (citing 12 N.Y.C.R.R. § 142-2.4). As of the December 31, 2013, the basic minimum hourly wage rate rose to $8.00 per hour in New York State. *See* 12 N.Y.C.R.R. § 142-2.1. Defendants never paid Plaintiff any premium beyond his $8.00 per hour wage for each day Khurana worked a shift in excess of ten hours during his entire two years of employment at USA Gas Station. *See supra* at 17-19. Accordingly, in addition to the ongoing overtime violation discussed above, Plaintiff is entitled to unpaid spread of hours compensation from Singh for each day he worked from December 31, 2013 until on or about July 7, 2014.

### e. NYLL § 195 Claims

The Court, however, declines to find that Singh violated Sections 195(1) or 195(3) of the NYLL with respect to Wage Notice and Wage Statement statutory liability because he neither expressly or implicitly consented to the pleadings being amended during or after the bench trial as would allow the addition of these otherwise unpled causes of action.

As neither of these claims appear in the Complaint, which was never amended or superseded prior to trial, nor the Joint Pre-Trial Order, Plaintiff's request for a judgment in his favor on these two causes of action, would constitute a motion to amend the pleadings post trial. *See* Rule 15(b); Compl.; JPTO. Federal Rule of Civil Procedure 15(b)(2), which governs such amendments, states:

> For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. Pro. 15(b)(2). Defendant did not expressly consent to amending the pleadings at trial nor did he in his testimony address the issue of wage statements or notices directly as could support a finding of implied waiver. *See* Tr. at 106-118. Additionally, Plaintiff makes no argument in his demand for damages under NYLL § 195 that an implicit waiver occurred. *See* Pl. Findings at 17-18. Any reference to a lack of proper wage notices or statements cannot itself support a finding of implied waiver as these facts were independently relevant regarding Defendants' willfulness and/or Plaintiff's burden with respect to substantiating his hours for liability and damages. *See In re NXXI, Inc.*, 11-23712, 2014 WL 2978175, at *5 (Bankr. S.D.N.Y. July 2, 2014), *aff'd sub nom. In re NXXI Inc.*, 14-CV-8082, 2016 WL 6267973 (S.D.N.Y. Oct. 25, 2016) (citing *Grand Light & Supply Co. Inc. v. Honeywell Inc.,* 771 F.2d 672, 680 (2d Cir. 1985) (noting that the purpose of Rule 15(b) is to allow pleadings to conform to issues actually tried, not to extend pleadings to issues inferentially suggested by evidence in the record); 3 James Wm. Moore *et al.*, *Moore's*

*Federal. Practice* ¶ 15.18[1] (3d ed. 2013) at 15–90 ("A court may not find consent when evidence supporting an issue allegedly tried by implied consent is also relevant to other issues actually pleaded and tried.")).  Accordingly, the Court declines to allow such an amendment and dismisses Plaintiff's claims under NYLL § 195(1) and (3) in their entirety.

### 3. Counterclaim

Finally, the Court dismisses Singh's counterclaim as he has provided only inadmissible hearsay in support of his allegation that Plaintiff was stealing from JMP USA by manipulating the gas pump records.  Under the Federal Rules of Evidence, hearsay is any statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. § 801(c).  "Hearsay is inadmissible, even if relevant, unless there is an applicable exception."  *Amerisource Corp. v. RxUSA Int'l Inc.*, 02-CV-2514, 2009 WL 235648 at *1 (E.D.N.Y. Jan. 30, 2009) (citing Fed. R. Evid. § 802).  Consequently, hearsay that does not fall under an exception cannot sustain a party's evidentiary burden in a civil proceeding.  *See Burke v. Gutierrez,* 04 CIV. 7593, 2006 WL 89936, at *7 (S.D.N.Y. Jan. 12, 2006), *aff'd sub nom. Burke v. Evans*, 248 F. App'x 206 (2d Cir. 2007) ("Inadmissible hearsay is insufficient to establish a *prima facie* case of discrimination").

At trial, Singh attempted to introduce evidence in support of his counterclaim that is barred as inadmissible hearsay, specifically, a report by an unnamed technician whom he claims serviced the USA Gas Station's pumps.  Tr. at 113-116,

122.  The unidentified technician was never deposed, proffered in the Joint Pre-Trial Order filed with the Court, or produced as a witness at trial, and no exception to the bar against hearsay allowed Singh to testify on the technician's behalf.  *Compare* Fed. R. Ev. 801-803 *with* Tr. at 113-116, 122.  The alleged technician's report was also not admitted into evidence at trial as Singh failed to establish a proper foundation and it was not identified in the Joint Pre-Trial Order.  *Compare* Fed. R. Ev. 803(6)(B) *with* Tr. at 113-116, 122 *with* JPTO.  Accordingly, as the Individual Defendant failed to sustain his burden with regard to his counterclaim against Khurana, the Court dismisses it in its entirety.

### C. **Damages**

Having concluded that Plaintiff has established Defendants' liability for violations of the FLSA and NYLL, the Court considers whether Plaintiff has satisfied his burden of establishing the damages that he claims.  Regarding the bench trial, it is well-established that such a party seeking damages "must prove the amount of damages by a preponderance of the evidence."  *Solis v. SCA Rest. Corp.,* 938 F. Supp. 2d 380, 392 (E.D.N.Y. 2013).  With respect to JMP USA, since it is in default, the court must ascertain damages with "reasonable certainty."  *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

To this end, the Court relies upon the Findings of Fact herein with respect to its determination of damages against both Defendants.  Khurana and Singh provided sworn testimony and documentary evidence at trial relevant to the determination of damages for both Defendants.  Accordingly, as the Court may hold an inquest

concerning the award of damages against the defaulting party, the Court relies upon the evidence and testimony produced at trial with respect to its determination of damages against both Defendants, who, in any event, are jointly and severally liable. *See Perez v. Jasper Trading, Inc.,* 05-CV-1725, 2007 WL 4441062, at *1 (E.D.N.Y. Dec. 17, 2007) (holding an evidentiary hearing to determine damages whereat only one party appeared and offered evidence).

For the reasons set forth below, the Court concludes that Plaintiff is entitled to recover $39,427.44 in compensatory and liquidated damages and prejudgment interest, as well as an additional amount for post-judgment interest accruing in accordance with federal law.   The Court further grants Plaintiff leave to file an application for attorneys' fees and costs.

1.  Statutes of Limitations

In calculating the damages to be awarded, the Court first examines whether the entire time frame for which Khurana seeks to recover is allowable under the FLSA and NYLL's statutes of limitations.

A cause of action arising under the FLSA must "be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  *See* 29 U.S.C. § 255(a).  For that reason, claims of willful violations of the FLSA are subject to a three-year statute of limitations.  *See Cohen v. Gerson Leman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) ("The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of

limitations is three years."). A violation of the FLSA is considered willful "if the employer 'either knew or showed a reckless disregard for the matter or whether its conduct was prohibited by the [FLSA]." *Quiroz v. Luigi's Doleria, Inc.*, 14-CV-871, 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016) (quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009)); *see* 5 C.F.R. §551.104 (defining "reckless disregard" as a "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]"). It is well-established that "[t]he plaintiff bears the burden of proving willfulness, and '[a]ll that is required is that the employer knew or had reason to know that it was or might have been subject to the FLSA." *Eschmann*, 2014 WL 1224247, at *5 (quoting *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984)).

The NYLL provides for a six-year statute of limitations. *See* N.Y. Lab. Law § 198(3); *see also Eschmann v. White Plains Crane Serv., Inc.*, 11-CV-5881, 2014 WL 1224247, at *4 (E.D.N.Y. Mar. 24, 2014) ("A plaintiff seeking damages for an overtime violation under the NYLL has six years from the date of the alleged violation to assert his claim.").

Here, Plaintiff has established by a preponderance of the evidence that Defendants willfully violated the FLSA. Singh himself testified to keeping no record of the hours and shifts that Plaintiff worked and that he never gave him any form of a paystub or a receipt documenting his wages, instead paying him always in cash, directly out of the register. *See* Tr. 95-97. Defendants in their Answer and in the Joint Pre-Trial Order, and Singh in his Proposed Findings of Fact and Conclusions of

Law exhibit an awareness of the overtime requirements of FLSA and NYLL arguing that Plaintiff either was not entitled to overtime because he was exempt as a salaried manager, and alternatively that he was in fact paid all the overtime he was due. *See* Answer; JPTO ¶ 4(i); Def. Findings at 2-4. These facts are sufficient to establish, at a minimum, the requisite recklessness, that Defendants "knew or had reason to know that [they were] or might have been subject to the FLSA," warranting application of the three-year statute of limitations. *Eschmann*, 2014 WL 1224247, at *5; *see also Reich v. Waldbaum, Inc.*, 52 F.3d 35, 41 (2d Cir. 1995) (holding that the defendant acted willfully where the defendant failed to pay the plaintiff overtime based on his belief that the plaintiff was exempt under the FLSA); *Mark v. Gawker Media LLC*, 13-CV-4347, 2016 WL 1271064, at *2 (S.D.N.Y. Mar. 29, 2016) (quoting *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 627 (S.D.N.Y. 2014) (noting that "employers may be found to have acted recklessly pursuant to the FLSA if they made neither a diligent review nor consulted with counsel regarding their overtime practices and classifications of employees); *Moon*, 248 F. Supp. 2d at 231 (holding that the defendant's knowing violations of recordkeeping requirements was sufficient to establish willfulness under the FLSA); *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337-38 (S.D.N.Y. 2005) (holding that the defendant's knowing failure to pay appropriate overtime established willfulness under the FLSA).

As Plaintiff is entitled to a three-year statute of limitations under the FLSA, federal and state law equally cover Khurana's entire claim. Plaintiff's filed the Complaint on July 24, 2014 and now seeks damages from violations running from

July 8, 2012 through July 6, 2014.  *See* Compl.; Est. Calc. of Dams. At 1-3. Accordingly, Khurana may recover damages under either the FLSA or the NYLL.[2]

### 2. Unpaid Overtime Wages

In calculating the exact amount to be awarded, Plaintiff reasonably utilizes the 84 shift reports entered into evidence to substantiate the hours worked during 81 weeks of Khurana's employment.  *Compare* Pl. Ex 1-84 *with* Est. Calc. of Dams. Plaintiff however fails to proffer a rationale for asserting that, for those weeks that Khurana does not have records, the weekly hours should assumed to be 102 or 96, which are each markedly higher than the average of his documented weeks of employment.  *See* Est. Calc. of Dams.

Singh does not address this issue and argues instead that Plaintiff was properly compensated at the overtime rate and simply worked far fewer hours than his testimony suggested without any evidentiary support.  *See* Def. Findings at 1-4. Additionally, Singh asserts that Plaintiff's calculations should be disregarded because they are supported only by his "words" and not actual records of his hours, which he conceded do not exist.  *Id.*

---

[2] Plaintiff may not recover compensatory damages under both the FLSA and NYLL for the same time period.  *See Jin M. Cao v. Wi Liang Lexington Rest., Inc.*, 08 Civ. 3725, 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010) ("Although plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the Labor Law, they may not recover twice."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 49 n.15 (E.D.N.Y. 2015) ("Plaintiffs may not recover for unpaid wages under both statutes . . . .").

i.    *Number of Hours Worked*

As the number of hours at issue is disputed, the Court examines what amount of time Plaintiff has proven that he worked for which he is entitled to unpaid overtime compensation.

Both the FLSA and NYLL require that employers maintain accurate records of the hours and wages of their employees.  *See* 29 U.S.C. § 211(c) (requiring that employers "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him"); N.Y. Lab. Law § 661 (requiring that employers establish and maintain payroll records "showing for each week worked the hours worked, the rate or rates of pay and basis thereof").  Thus, contrary to Singh's assertion, where an employer fails to maintain accurate or adequate records, "an employee has carried out his burden if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 379 (E.D.N.Y. 2012) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187 (1946)); *see also Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997) (internal citations omitted) (holding that where a defendant fails to maintain required employment records, the employee may "submit sufficient evidence from which violations of [the FLSA] and the amount of an award may be reasonably inferred").  A "plaintiff can meet this burden 'by relying on recollection alone.'"  *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d

327, 335 (S.D.N.Y. 2005)).  Where a plaintiff satisfies his or her initial burden, "[t]he burden then shifts to the employer to show that the inference is not reasonable." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 273 (E.D.N.Y 2008).

Here, Defendants failed to maintain adequate records reflecting the number of hours that Khurana worked as well as his rate of pay.  In fact, Singh conceded that he neither kept any form of payroll records reflecting Plaintiff's employment at the USA Gas Station nor did he write down the number of hours that Plaintiff worked. *See* Tr. at 94-97.  In his Proposed Findings of Fact and Conclusions of Law, Singh reiterated this point in an effort to urge the Court to disregard the totals on the shift reports stating that it was not his business's practice to write down Khurana's hours because he trusted and treated him like a brother.  Def. Findings at 1-4.  However, there is no evidence in the record to support Singh's claim that Plaintiff somehow doctored the shift reports.  *See* Def. Findings at 3; JPTO ¶ 10; Tr. at 7-8, 121-30. Instead, the 84 shift reports, which Plaintiff offered, corroborate and supplement Khurana's recollection with respect to 81 out of 102 weeks of his employment. *Compare* Pl. Ex. 1-84 *with* Tr. 13-43.  Accordingly, as Defendants concede that they failed to maintain accurate records regarding Plaintiff's hours at USA Gas Station, the Court may, and does, rely on Plaintiff's recollection in conjunction with the records in determining the amount of unpaid overtime wages that has been proven by a preponderance of the evidence and with reasonable clarity.  *Rana v. Islam*, --- F. Supp. 3d ---, 2016 WL 5390941, at *2 (S.D.N.Y. Sept. 26, 2016) (quoting *Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 331 (S.D.N.Y. 2009)) ("Where, as here, an

employer has failed to maintain adequate records of an employee's time worked as required under the FLSA, 'a plaintiff employee must produce only sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'").

Applying these standards, the Court takes the average weekly hours worked in the 84 shift reports, approximately 78 hours per week, and uses that number instead of Plaintiff's suggestion of 102 or 96 hours for those weeks not covered by the reports, but during which it is undisputed that Plaintiff worked.    *See Armata v. Unique Cleaning Servs., LLC,* 13-CV-3625, 2015 WL 12645527, at *5 (E.D.N.Y. Aug. 27, 2015) (extrapolating average weekly hours and wages from time and payroll records to calculate unpaid overtime damages).   Based on the foregoing, the Court then determines that during the relevant time-period Khurana has substantiated that he worked 102 weeks and approximately 7,975.75 hours at USA Gas Station. After subtracting from this total an initial forty hours per week, 3,895.75 hours qualify as overtime hours for which Defendants never properly compensated Plaintiff.

ii.    *Regular and Overtime Rates of Pay*

As set forth above, pursuant to both the FLSA and NYLL, an employee's overtime rate of pay depends on the employee's "regular rate."   *See* 29 U.S.C. § 207(a)(1) (requiring that employers pay covered employees "at a rate not less than one and one-half times the regular rate" for hours in excess of forty); N.Y. Comp. Codes R. & Regs. tit. 12, § 138-2.2 (requiring that employers pay employees "at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of" 40).

An employee's "regular rate is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" *Doo Nam Yang*, 427 F. Supp. 2d at 338 (S.D.N.Y. 2005) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S. Ct. 1242 (1945)). To that end, the "regular rate" is calculated by "dividing the employee's weekly compensation by the number of hours for which that compensation is intended." *Moon*, 248 F. Supp. 2d at 230.

Plaintiff testified that he was an hourly employee and that his regular rate of pay was $8 per hour at all relevant times. *See* Tr. at 13. Defendant Singh did not dispute these two facts. *See* Tr. at 97; Def. Findings at 2-4. Accordingly, the Court concludes that Plaintiff's regular rate of pay at all relevant times was $8 per hour, while his overtime rate of pay would have been $12 per hour, a rate of underpayment of $4.00 per qualifying overtime hour. Based on the foregoing, Plaintiff is entitled to recover $15,583 in unpaid overtime compensation for the 3895.75 overtime hours he worked.

### iii.    Calculation of Unpaid Spread of Hours

For Defendants' violations of the NYLL's spread of hours requirements, the Court awards Plaintiff one hour at the applicable minimum wage rate for each of his shifts in excess of ten hours in length calculated as follows. Each shift of Khurana's employment with USA Gas Station exceeded 10 hours, and, although he was never provided an uninterrupted break, Defendants offered no additional compensation beyond Plaintiff's $8 an hour wage. *See* Tr. at 21-22. From December 31, 2013 through to the end of him employment on July 7, 2014, Khurana's wage of $8.00 was

equal to the New York State minimum wage. Compare Tr. 13, 97 *with* N.Y. Lab. Law
§ 652(1). During this time period, Plaintiff testified that he was working six days a
week from opening to closing, shifts of approximately twelve to fifteen hours long. Tr.
at 15. Each of these shifts qualifies for mandatory spread of hours compensation,
which it is undisputed that Defendants failed to pay. *See supra* at 12-13, 29. Thus,
the total number of qualifying shifts is 163. Accordingly, the Court determines that
Defendants failed to pay Plaintiff $1,304 in spread of hours compensation under the
NYLL by multiplying the total shifts by applicable minimum wage. Based on the
foregoing, with respect to compensatory damages, the Court, therefore, awards
Plaintiff $16,887 for unpaid overtime and spread of hours violations.

   3. Liquidated Damages

Plaintiff also seeks liquidated damages under both the FLSA and the NYLL.
*See* Pl.'s Findings at 15-16. For the reasons set forth herein, Plaintiff is entitled to a
total of $16,887 in liquidated damages.

   *i.    FLSA Liquidated Damages*

Under the FLSA, a plaintiff may recover "in the amount of their unpaid . . .
wages . . . and in an additional equal amount as liquidated damages" absent a
showing that the employer acted in good faith. 29 U.S.C. §§ 216(b), 260; *see also
Reiseck Universal Commc'ns of Miami, Inc.*, 06 Civ. 777, 2014 WL 5374684, at *3
(S.D.N.Y. Sept. 5, 2014) (internal quotation marks and citation omitted) ("For FLSA
claims, liquidated damages may be awarded in an additional amount equal to the
unpaid overtime wages, essentially doubling a plaintiff's recovery."); *Angamarca v.*

*Pita Grill 7 Inc.*, 11 CIV. 7777, 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012) ("Liquidated damages under the FLSA are equal to the amount owed in federal unpaid and overtime wages."); *Jiao v. Shi Ya Chen*, 03 Civ. 165, 2007 WL 4944767, at *16 (S.D.N.Y. Mar. 30, 2007) ("The [FLSA] provides for liquidated damages in order to compensate employees for the often obscure and hard-to-prove consequences of having been wrongfully denied pay, rather than to punish employers."). Having concluded that Plaintiff is entitled to recover $15,583 in unpaid overtime compensation under the FLSA and that there is no evidence of Defendants' good faith, Khurana is also entitled to recover $15,583 in liquidated damages under that statute.

ii.    *NYLL Liquidated Damages*

Because the NYLL permits recovery of liquidated damages amounting to 100% of the total unpaid wages for violations that occurred after April 9, 2011, Plaintiff is also theoretically entitled to recover under the NYLL an amount equal to the liquidated damages awarded under FLSA plus his unpaid spread of hours compensation. *Hengjin Sun*, 2016 WL 1587242, at *3 (citing N.Y. Lab. Law § 663(1)); *see also Rana*, 2016 WL 5390941, at *3 (awarding NYLL liquidated damages at a rate of 100% for overtime, minimum wage, and spread of hours violations occurring from 2012 through 2014. However, "the New York Legislature's 2009 and 2011 reforms have spawned 'an emerging trend towards denying a cumulative recovery of damages' under the FLSA and NYLL." *Hengjin Sun*, 2016 WL 1587242, at *4 (quoting *Santana v. Brown*, 14 Civ. 4279, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015)). Courts have more recently observed that "'[b]ecause both forms of liquidated damages serve

the same purpose and have the same practical effect of deterring wage violations and compensating underpaid workers,' NYLL's recent amendments 'have undermined the basis,' such as it was, for distinguishing between FLSA's and NYLL's liquidated damages provisions." *Hengjin Sun*, 2016 WL 1587242, at \*4 (quoting *Chen v. New Fresco Tortillas Taco LLC*, 15 Civ. 2158, 2015 WL 5710320, at \*7 (S.D.N.Y. Sept. 25, 2015)).   Accordingly, because Plaintiff is entitled to liquidated damages under the FLSA, the Court declines to award duplicative overtime liquidated damages under the NYLL, but will award additional liquidated damages in the amount of $1,304 for the spread of hours violations that are recoverable only under the NYLL.  *See* supra 41-42.[3]  Based on the foregoing, Plaintiff is entitled to a total of $16,887 in liquidated damages.

4.  Prejudgment Interest

Plaintiff also seeks prejudgment interest under the NYLL.  *See* Compl. Prayer for Relief ¶ B; Est. Calc. of Dams.  Although it is "well settled" that prejudgment interest is not awardable under the FLSA, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at \*3 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015).  Under the New York Civil Practice Law and Rules ("CPLR"), "[i]nterest shall be at the rate of nine per

---

[3] The Court recognizes that this conclusion is contrary to its Reports and Recommendations in *Escobar v. Del Monaco Bros. Indus. Inc.*, 14-CV-3091 at 26-27 (E.D.N.Y. Jul. 27, 2016) (Report & Recommendation), adopted by, 2016 WL 4275705 (E.D.N.Y. Aug. 13, 2016) and *Euceda v. Preesha Operating Corp.*, 14-CV-3143 at 18-20 (E.D.N.Y. July 13, 2016) (Report & Recommendation), adopted by 14-CV-3143 (E.D.N.Y. Sept 30, 2016).  Upon reconsideration of these earlier orders, the Court concludes that separate awards of liquidated damages under each statute for the same compensatory damages are inappropriate.

centum per annum." N.Y. C.P.L.R. § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (quotation omitted). A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *Gunawan*, 897 F. Supp. 2d at 93.

Here, the relevant period of employment for Plaintiff's overtime and spread of hours claims is July 8, 2012 through July 6, 2014. *See* Est. Calc. of Dams. 1-3. This action was filed July 24, 2014. The mid-point between July 8, 2012 and July 24, 2014 is approximately July 16, 2013. The compensatory damages for unpaid overtime wages and spread of hours due under the NYLL for that time period is $16,887.[4] Accordingly, at a rate of 9% per year, the Court awards pre-judgment interest in the amount of $5,653.44 to Plaintiff.[5]

---

[4] This total includes the amount that the Court awarded under the FLSA because the equivalent compensatory award is available under the NYLL for the same time period. *See Santillan*, 822 F. Supp. 2d at 298 (holding that prejudgment interest and liquidated damages under NYLL may be awarded in a matter also substantiating violations of the FLSA for an overlapping time period).

[5] This figure was reached by taking the number of days between the mid-point selected, July 16, 2013, and the date of this Order, April 5, 2017 (1,359 days) and multiplying it by the daily interest rate of $4.16 ($16,887 [principal loan amount] x 0.09 [yearly interest] = $1,519.83 (yearly interest) / 365 days = $4.16 per day interest).

5.  <u>Post Judgment Interest</u>

With respect to Plaintiff's request for post-judgment interest, although the Court has exercised supplemental jurisdiction over Khurana's state-law claims, any judgment awarded would, nevertheless, constitute a federal judgment.  *See Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) (affirming district court's refusal to apply New York post-judgment 9% interest rate).  Therefore, that judgment would be governed by the plain language of 28 U.S.C. § 1961, which applies to "any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961.  Accordingly, the Court awards post-judgment interest at the statutorily prescribed federal rate.  *See Cappiello,* 720 F.2d at 112 (citing to 28 U.S.C § 1961(a)-(b)).[6]

6.  <u>Attorneys' Fees and Costs</u>

Finally, Plaintiff argues that he "is entitled to a statutory award of counsel fees to be determined at a hearing to be held on a [date] determined by this Court."  Pl.'s Supp. Br. ¶ 49.  Both the FLSA and NYLL allow for an award of "reasonable" attorney's fees to a prevailing party.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *see also Zhen Ming Chen v. New Fresco Tortillas Taco LLC*, 15 Civ. 2158, 2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25, 2015) ("Under the FLSA and NYLL, a prevailing

---

[6] "Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges … Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually." 28 U.S.C. § 1961(a)-(b).

plaintiff is entitled to reasonable attorneys' fees and costs."). Having determined that Plaintiff established Defendants' liability for violations of the FLSA and NYLL by a preponderance of the evidence, the Court concludes that Plaintiff is entitled to a reasonable award of attorneys' fees and costs. However, because Plaintiff has not submitted documentation or other substantiation to support his request, he is granted leave to submit an application for such fees and costs.

## IV.    CONCLUSION

For the reasons set forth above, the Court concludes that Plaintiff has proven his claims by a preponderance of the evidence and that he is entitled to recover $39,427.44 in damages and pre-judgment interest with post-judgment interest accruing at the statutorily prescribed federal rate from Singh. Additionally, a default judgment shall be entered in this same amount against JMP USA. Singh and JMP USA are held jointly and severally liable for the damages. Finally, on or before May 5, 2017, Plaintiff may submit an application for attorneys' fees and costs.


Dated:  Central Islip, New York      **SO ORDERED**
       April 5, 2017

                                   /s Steven I. Locke
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge